UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACE BRIGGS,<br><br>        Plaintiff,<br><br>   v.<br><br>JUUL LABS INC.,<br><br>        Defendant. | Case No. 21-cv-08811-JSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE**<br><br>Re: Dkt. No. 10 |

Grace Briggs alleges that JUUL Labs, Inc. discriminated, harassed, and retaliated against her during the course of her employment. JUUL's motion to transfer the case pursuant to 28 U.S.C. § 1404(a) is now pending before the Court.[1] (Dkt. No. 10.) After carefully considering the parties' written submissions, and having had the benefit of oral argument on March 17, 2022, the Court concludes that transfer to the Eastern District of North Carolina is appropriate.

## BACKGROUND

**A. Factual Allegations**

Grace Briggs, a former JUUL employee, resides in Smithfield, North Carolina. (Dtk. No. 1 ¶¶ 1, 6.)[2] She is a 51-year-old African American woman who began working for Juul in September 2017. (Dkt. No. 1 ¶¶ 6, 23.) When JUUL hired Ms. Briggs, JUUL's headquarters were in San Francisco, California, but JUUL has since moved its headquarters to Washington D.C. (Dkt. No. 10-2 ¶ 3.)

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 7, 8.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

JUUL hired Ms. Briggs as a Senior Quality Engineer, and she is highly skilled in microbiology and quality analysis. (Dkt. No. 1 ¶¶ 23, 27.) Ms. Briggs reported to, received directions from, and communicated with JUUL's San Francisco office. (Dkt. No. 1 ¶¶ 34, 36, 50, 89, 91; Dkt. No. 18 at 8-10.) However, Ms. Briggs actually worked from her home in Smithfield, North Carolina and at the AsteelFlashGroup ("AFG") facility in Raleigh, North Carolina. (Dkt. No. 1 ¶¶ 36, 199, 210.)

Ms. Briggs alleges that throughout her employment she was repeatedly harassed, discriminated against, and retaliated against for her race, age, disability, and for reporting illegal practices. (Dkt. No. 1 ¶ 1.) Ms. Briggs would send reports of the incidents she experienced along with quality reports to the San Francisco office. (Dkt. No. 1 ¶¶ 34, 36, 50, 89, 91; Dkt. No. 18-4 at 4, 6, 8, 10.) She also spoke with several employees at the San Francisco office either to receive instructions on what work she should be doing or to report the harassment and discrimination she experienced at the AFG facility. (Dkt. No. 1 ¶¶ 75-76, 88, 91-93 119, 141-43, 149-53, 222.)

All of the incidents that Ms. Briggs reported back to San Francisco occurred at the AFG facility or while Plaintiff was working from home in North Carolina. First, in April of 2018, the California office instructed her to provide quality checks at the products in the AFG facility. (Dkt. No. 1 ¶ 50.) Ms. Briggs, accompanied by Mr. McIver, an African American contractor hired to assist Plaintiff, arrived at the facility and were led to the line to conduct their inspection. (Dkt. No. 1 ¶¶ 31-32, 52-54.) Shortly after arriving, Ms. Marie Robinson, the Quality Assurance Supervisor at AFG, approached them, began questioning them, and attempted to get them to leave before two officers with firearms approached Plaintiff and Mr. McIver. (Dkt. No. 1 ¶¶ 56-60.) They were then escorted to an office where they were held for several hours despite white employees walking the floor freely. (Dkt. No. 1 ¶¶ 50, 58-61, 65-67.) They were eventually permitted to leave; however, Plaintiff was so shaken by this experience that she developed Post-Traumatic Stress Disorder ("PTSD"). (Dkt. No. 1 ¶ 77.)

The "the harassment and discrimination continued" at the AFG facility after that. (Dkt. No. 1 ¶ 79.) Ms. Briggs reported other subsequent violations to Joanna Engelke, Ms. Brigg's supervisor, and to Human Resources. (Dkt. No. 1 ¶ 219-22.)

Ms. Briggs also alleges she was retaliated against for observing and reporting contaminated and non-compliant JUUL products. (Dkt. No. 1 ¶¶ 43-46.) Ms. Briggs quickly noted numerous health and safety hazards: the nicotine was not "controlled, properly inspected, finished or monitored;" the nicotine was not being disposed of properly; there were numerous blood-related contamination issues; the products contained bugs and were mislabeled; and more. (Dkt. No. 1 ¶ 83, 87, 90, 93, 95-97, 99, 102-103, 105, 110, 114-115, 119, 180.) She reported these incidents repeatedly. Plaintiff informed AFG manager Celeste Zippetell, Mr. deSouza, the Director of Quality & Manufacturing Engineering, who directed Ms. Briggs on certain issues, and stakeholders in California about the nicotine issues. (Dkt. No. 1 ¶¶ 84, 88-91, 126.) Marie Robinson, the Quality Assurance Supervisor that had her removed from the line previously, insisted that the lines did not need to stop running for cleaning despite Ms. Briggs' reports and prevented Ms. Briggs from doing her job. (Dkt. No. 1 ¶ 89, 127-28, 148, 154-56, 157, 159.) Ms. Briggs "abruptly stopped receiving the significant praise and accolades" and was met with hostility, opposition, and resistance after reporting all of the safety and health issues along with her issues with Ms. Robinson. (Dkt. No. 1 ¶¶ 149-54, 163, 168.) Later, Plaintiff expressed her concerns about the quality of the products with new Quality Assurance Manager, Keri Calero; however, Ms. Calero and Ms. Robinson would "openly walk out of meetings when they did not like the information or facts regarding non-conformance issues" and questioned Ms. Briggs' cleaning suggestions. (Dkt. No. 1 ¶¶ 169-71, 174-76.) Eventually, AFG told Ms. Briggs it no longer wanted her on site at its North Carolina facility and that she was to work from home. (Dkt. No. 1 ¶¶ 189, 192-93.)

In May 2018, Ms. Briggs suffered a traumatic brain injury and concussion and was permitted to leave under the Family and Medical Leave Act before continuing to work from home. (Dkt. No. 1 ¶¶ 197-99.) On January 7, 2019, she was permitted to return to the line, but she was questioned by Damien Reverte upon her return and told to leave. (Dkt. No. 1 ¶¶ 200-204.) Later that same day, Ms. Briggs had a meeting with her supervisor and was informed that she would be working from home on a project for JUUL's Asia market. (Dkt. No. 1 ¶¶ 207-10.) Ms. Briggs was not cleared by her doctor to fly due to her PTSD; however, she was told that there was no

more work for her in North Carolina, so she began working from home and flying out to facilities. (Dkt. No. 1 ¶¶ 213, 217, 227-31.) Despite continuing to perform well, JUUL fired Ms. Briggs on November 13, 2019. (Dkt. No. 1 ¶¶ 218, 243-49.) She was 41 years old at the time. (Dkt. No. 1 ¶ 249.) Marcus Gesner, former Vice President, Supply Chain Quality, who resided in Massachusetts, made the decision to terminate Ms. Briggs' employment. (Dkt. No. 10 at 11; Dkt. No. 10-3 ¶ 8.)

**B. Procedural Background**

On November 12, 2021, Ms. Briggs filed her complaint alleging the following 14 claims: (1) violation of Title VII of the Civil Rights Act of 1964 (Count I); violation of the Americans with Disabilities Act (Count II); violation of the Age Discrimination in Employment Act (Count III); violation of the California Fair Employment Housing Act (Count IV); violation of the Civil Rights Act of 1866 (Count V); violation of the Family and Medical Leave Act (Count VI); violation of California Labor Code § 1102.5 (Count VII); violation of Employee Income Security Act of 1974 (Count VIII); violation of Employee Retirement Income Security Act of 1974 (Count IX); breach of contract (Count X); breach of duty of good faith and fair dealing (Count XI); unjust enrichment in alternative to Count X and XI (Count XII); promissory estoppel in alternative to Count X and XI (Count XIII); and violation of California Labor Code § 204 (Count IV). (Dkt. No 1 at 34-47.) She requests damages, injunctive relief, and her attorney's fees and costs.

JUUL subsequently filed the pending motion to transfer. (Dkt. No. 10.)

**DISCUSSION**

"[A] district court may transfer any civil action to any other district or division where it might have been brought" if it is "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). JUUL, as the moving party, bears the burden of showing that transfer is warranted. *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

**A.     Venue is Proper in North Carolina**

Ms. Briggs could have brought this case in the Eastern District of North Carolina. Venue is proper there because venue is proper where the defendant resides. 28 U.S.C. § 1391(b)(1). For

purposes of the venue statute, a corporation resides "in any judicial district in which [the defendant corporation] is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). JUUL is subject to personal jurisdiction in the Eastern District of North Carolina because Ms. Brigg's claims arise out of JUUL's contacts with North Carolina; namely, North Carolina is where JUUL employed Ms. Briggs and where she experienced the discrimination, harassment, and retaliation. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, ("Specific [personal] jurisdiction exists when a case 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'"). Venue is also proper where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The complaint's allegations establish that a substantial part of the events or omissions occurred in the Eastern District of North Carolina where Ms. Briggs worked the entire time at issue in her complaint.

### B. Transfer is Appropriate

Having determined that Ms. Briggs could have filed in North Carolina, the next question is whether the Court should transfer the case to her home state. District courts adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (cleaned up). In determining convenience and fairness, courts generally consider the following factors, as relevant:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498–99. "No single factor is dispositive;" instead, "[w]eighing of these factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge." *Chess v. Romine*, No. 18-CV-05098-JSC, 2018 WL 5794526, at *5 (N.D. Cal. Nov. 2, 2018). The Court finds that on balance the relevant factors warrant transfer.

First, although Ms. Brigg's decision to file in this District is given some weight, because she does not reside in this District, did not reside in this District when the conduct she challenges occurred, and nearly all of the challenged conduct occurred in North Carolina where she was employed, her choice to file in California is given less weight. *See Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009); *see also Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 949-50 (9th Cir. 2017) (stating that deference to a plaintiff's choice of forum is "far from absolute") (cleaned up)). Ms. Briggs' emphasis on the allegations that she was given instructions from JUUL's former San Francisco headquarters and that the retaliatory decisions were made in San Francisco (Dkt. No. 1 ¶¶ 36, 50, 89, 91) does not persuade the Court that her decision to file suit nearly 3,000 miles from her home and former employment should control.

Second, on balance, the remaining relevant factors favor transfer. All of the incidents about which Ms. Briggs complains occurred in North Carolina, either at the AFG facility in Raleigh, North Carolina or when she was working from her home in Smithfield, North Carolina. For example, she observed the allegedly contaminated and non-compliant JUUL products in North Carolina and she reported her observations to her Quality Assurance Supervisor in North Carolina. (Dkt. No. 1 ¶¶ 82-84, 90-103, 106, 110, 114-15, 119, 123-28, 157, 169-72.) Further, she developed PTSD because of an April 2018 event at the AFG facility in North Carolina. (Dkt. No. 1 ¶¶ 77-78.) While Ms. Briggs alleges that she reported these incidents to San Francisco headquarters, the incidents occurred in North Carolina. (Dkt. No. 1 ¶¶ 36, 50, 89, 91.)

The convenience of witnesses weighs strongly in favor of transfer. *See Jackson v. Euphoria Wellness, LLC*, 2020 WL 5366419, *9 (N.D. Cal. Sept. 8, 2020) (convenience of witnesses is one of the most important factors in a motion to transfer). Most of the individuals identified in Ms. Briggs' complaint reside in North Carolina: Charles McIver, Christopher Jones, Maria Robinson, Rob Morehead, Celeste Zippetell, Keri Calero, Damien Reverte, AFG Management, AFG QA Team, line workers, security, and Ms. Briggs' doctor for her medical leave claims. (Dkt. No. 1 ¶¶ 31-32, 36, 59, 64, 84-85, 94, 110, 126, 160, 169-71, 176, 186-88, 190; Dkt. No. 10-3 ¶¶ 5, 6; Dkt. No. 10-2 at 14-17.) Further, witnesses cannot be compelled to attend trial unless they can be served with subpoenas within the trial district, or at any place outside of the

district that is within 100 miles of the place of trial. Fed. R. Civ. P. 45(e). Ms. Briggs offers no explanation as to how these many percipient witnesses could be compelled to travel across the United States to attend trial in San Francisco. They cannot.

Two other witnesses, Joanna Engelke, Ms. Briggs' supervisor, and Marcus Gesner, the purported decisionmaker with regard to Ms. Briggs' termination, both resided in Massachusetts, on the same coast as North Carolina, at the time of the termination decision. (Dkt. No. 10-2 ¶ 5; Dkt. No. 10-3 ¶ 2, 4, 8.) JUUL represents that if the case is transferred to North Carolina, it will make its employees available in North Carolina as necessary. (Dkt. No. 10 at 21.) Additionally, Ms. Engelke attests that North Carolina is far more convenient for her than California. (Dkt. No. 10-3 at 3.)

In her opposition to the motion to transfer, Ms. Briggs identifies additional witnesses relevant to her age, disability, and wage discrimination claims: Mr. Lim, Mr. deSouza, Mr. Ferkol, and Ms. Kastner. (Dkt. No. 18 at 22.) She contends each resides in California. (Dkt. No. 18-4 at 4, 6, 8, 10.) Mr. deSouza is alleged to be a person whom she alerted about the product quality issues and Mr. Lim is the person to whom she complained about repeated discrimination. (Dkt. No. 1 ¶¶ 75-76, 91, 119.) Mr. Ferkol and Ms. Kastner allegedly initially offered praise and recognition to Ms. Briggs (Dkt. No. 1 ¶ 141), but Ms. Briggs does not otherwise explain what material testimony they may possess besides saying that she "reported to the San Francisco office." (Dkt. No. ¶ 36.) Thus, while there may be a trickle of California witnesses, the vast majority of the witnesses reside in North Carolina or outside California. Therefore, the convenience of witnesses favors North Carolina over California.

Ms. Briggs' insistence that California is nonetheless a convenient forum because her employment agreement is governed by California law is misplaced. Her offer letter does not state what law governs her employment. (Dkt. No. 18-2 at 2-4.) The letter does incorporate a "Proprietary Information and Invention Assignment Agreement," which states that it is governed by California law and includes a Northern District of California forum selection clause. The clause and governing law provision, however, are limited to "disputes arising out of or relating to this Agreement" (*id.* at 8); that is, disputes arising out the Proprietary Information and Invention

1  Agreement. Ms. Briggs' claims do not arise out of that Agreement and thus that provision is
2  inapplicable. There is thus nothing in the record that supports a finding that her employment
3  agreement is governed by California law.
4        That Ms. Briggs makes claims under California law does weigh in favor of keeping the
5  case here. *Jones,* 211 F.3d at 498 (one issue on a 1404(a) motion is which state is more familiar
6  with the governing law). However, Ms. Briggs also brings claims under federal law, including
7  Title VII. A Title VII claim may be brought in one of three places: (1) "in any judicial district in
8  the State in which the unlawful employment practice is alleged to have been committed"; (2) "in
9  the judicial district in which the employment records relevant to such practice are maintained and
10 administered"; or (3) "in the judicial district in which the aggrieved person would have worked but
11 for the alleged unlawful employment practice[.]" 42 U.S.C. § 2000e-5(f)(3); *Passantino v.
12 Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000) ("In general, the
13 effect of Title VII's venue provision is to allow suit in the judicial district in which the plaintiff
14 worked or would have worked.").
15       Ms. Briggs' Title VII claim alleges discrimination, harassment and retaliation. (Dkt. No. 1
16 ¶ 271.) The complaint's allegations establish that nearly all of that conduct occurred in North
17 Carolina, for the reasons explained above. Employment records are not maintained in California,
18 (Dkt. No. 10-2 ¶ 5), and Ms. Briggs does not allege that she would have worked in California.
19 Further, JUUL offers evidence that the employment decisions as to Ms. Briggs' employment were
20 not made in California. (Dkt. No. 1-2 ¶ 7-8; Dkt. No. 10-2 at 17-19.) Thus, there is a serious
21 question whether venue of the Title VII claim is proper in this District. The presence of that claim
22 thus weighs in favor of transfer.

## CONCLUSION

24       Weighing the relevant *Jones* factors above, the Eastern District of North Carolina, where
25 the case could have been brought, is a far more convenient venue. Ms. Briggs and most of the
26 witnesses reside there. Nearly all of the challenged conduct occurred there. And JUUL is no
27 longer headquartered in this District. The Court accordingly GRANTS JUUL's motion to transfer
28 to the Eastern District of North Carolina on the condition that JUUL make its employees available

to testify at trial in North Carolina, as it represented it would do in its motion papers. (Dkt. No. 10 at 21).

**IT IS SO ORDERED.**

Dated: 03/29/2022

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge